Alright, next case of the morning is United States v. Payne, number 24605A. And counsel for defendant is testing my French. Daniel? You have definitely the most correct French, but we are from Mississippi, so we say that. Okay. Well, whenever you're ready, you can start your argument. Thank you, your honors. May it please the court. My name is Brad Dagnall. I'm here on behalf of the appellant, Juan Payne. Your honors, this is a matter that involves the effect of an expungement, specifically the expungement statute from Mississippi 99-1971, and the effect that has on Mr. Payne's conviction in his district court case arising from the Northern District of Mississippi. It is our position that the district court erred in making the determination that the expungement did not count, was not properly acquired, and that there was additional, that there was no harmless error in the manner in which the sentence was imposed. Why isn't it harmless error since the judge said whether there was a situation accepted by the sentencing judge or not, it would be harmless because the same sentence was going to be given under either situation. I would say that there is no harmless error, your honor, because the specific findings that the court made during the sentencing was that, one, that 4A1.2J only applies if the expungement was due to innocence or errors of law. Two, that there was no evidence of rehabilitation on behalf of the defendant. Three, that the expunged conviction could still be used for other purposes. And four, that this case was similar to the Johnson case, which has been cited in the briefs, in which very clearly some fraudulent activity took place on behalf of the defendant and his counsel, wherein the defense counsel had filed a petition for expungement, actually received an indication from the state that they were opposed to said petition, and then got the order signed in effect afterwards. The reason I say that this is distinct is that this case is subsequent to the sentencing and actually the plea being filed. There was a motion to set aside the expungement that was filed in Washington County. That motion was filed in August of 24, and a hearing was finally conducted on that in November of 25. During the course of that hearing, we laid out the specifics of how this actually went down, as far as the filing of the petition for expungement and the order of expungement. After the petition was filed, there was no activity taken on it for some period of time. The first activity that took place was when the assistant district attorney reached out to our office, requesting us to provide a proposed order. That was done. She signed it by agreement and submitted it to the judge. It's entirely different from the Johnson case, where the defense counsel received notice of an objection to it, and then proceeded to have the petition and have the order signed after actually knowing of the objection to it. In this case, we had a hearing before Judge Richard Smith in Washington County Circuit Court, in which an order was entered after the fact, clearly indicating that there was no fraud or misrepresentation made on behalf of either the defendant, Mr. Payne, or his counsel, and that he was entitled to the expungement. That's clear error in the judge's ruling there. But the sentence would have been the same. You can't ignore the judge's decision to issue a sentence that either respected or didn't respect the expungement. Your Honor, the issue is that for the reasons that the judge indicated that she was granting, that she was issuing the sentence that she did, the 180 months, all of these factors would have indicated that there might be some reason to enhance the punishment. The guideline range that was contemplated at sentencing in the PSR was a guideline range of 262 to 327 months, based on criminal history, based on offense level. Based on this judge's ruling, if these were the factors that were considered, and these were the exact things that were made, it would have then been more appropriate for an upward departure than a downward departure. In making the downward departure, it seems as if there was an indication that there might have been some recognition from the district court that the expungement had some validity, and that this was just an attempt to avoid having it being overturned on appeal. That's why I say that we can't say that there was harmless error in this instance specifically for that reason. Turning to the effect of the expungement in the Fifth Circuit, I understand that there's been a long line of cases that essentially say that expungements are only considered if they're based on actual innocence, errors of law, or unconstitutionality. But what's important to recognize is that because there is no expungement statute in the federal system, we have to look at the state court's expungement statutes. What appears to be from the evolution of the language that came about, the actual innocence, errors of law, unconstitutionality, based on other state statutes, specifically cited in the Gray case from the Southern District, that the expungement there was overturned, it was not counted, and part of the reason it was not counted was because the expungement was based on the Louisiana Code. Louisiana Code explicitly allows for an expunged conviction to be used in subsequent prosecutions, subsequent convictions, to enhance the conduct. That is likewise in various other state statutes. In the Hines case, we had an Arkansas expungement statute that allowed for law enforcement and judicial officers to maintain these records for use in other instances, and it explicitly did not destroy the records. That's different from what the Mississippi statute allows. The Mississippi statute explicitly returns the defendant to the state he enjoyed prior to being charged or convicted of the crime. It is as total and complete an expungement as I can possibly imagine from any state statute. Well, but again, the guidelines suggest that if a conviction was expunged for a reason like, quote, to restore civil rights or remove stigma associated with the criminal conviction, what does that mean? Is it counted or not counted? Judge, the Mississippi state legislator has addressed that by the certificate of rehabilitation that exists in 97-375. That is a specific restoration of certain civil rights. So had he not been prosecuted in federal court, would he be able to vote again? Is that what you're saying? He would still have other felony convictions that would not allow that, so that's not an issue here for Mr. Payne. But I would point out that in the Dabowski course that was cited, the court explicitly recognized that the legislature in Massachusetts knows the difference between set aside or expunged and chose in their statute to use the set aside language. Likewise, the Mississippi legislature also recognizes the difference between a minor restoration of some civil rights versus a total and complete expungement, and that's why there's two statutes on it. And specifically, Mr. Payne's expungement was conducted pursuant to 99-1971, which is the total and complete expungement. You know, again, going back to what Judge Clement, which if you read them, y'all had a long hearing about all this. Yes, ma'am. And the judge was very clear what her view of this was. Yes, ma'am. She did not think that there was, I forgot the word she used, but rehabilitation. And she said in plain terms, I don't care that you got an expungement. I would enter the same sentence no matter what. I agree that. And she has the authority to do that, doesn't she? I agree that is what the district court said, Judge. That's why this has been litigated in the Washington County Circuit Court. We had another long hearing in that court. And at the conclusion of that hearing, as an element that's necessary, arguable from the government in their brief about the rehabilitation, the court, after a long, lengthy hearing on the record, issued his order clearly indicating that Mr. Payne was entitled to the expungement. And I'm saying this, the sentencing judge doesn't care about that. I cannot dispute that, Your Honor. That is what her ruling was. But that is why we argue that it is erroneous because the judge with the authority to evaluate and issue the expungement after hearing, after there was no briefing on the issue, but after hearing and after argument from counsel for both the state and the defendant, the judge with the authority to determine that there was value. The judge can expunge it. The sentencing court say, I don't care if you expunge it. I'm going to send you to this. That is what the district court ruled, Your Honor. And we disagree with that for the reasons that are in the brief and the reasons that we're arguing here today. At this time, I reserve my additional time for rebuttal if there are no further questions. That's fine. Thank you, sir. All right, Mr. Herzog. Your Honors, my name is John Herzog, and I represent the United States in this matter. This case is ultimately about expungements and how they're treated under the federal sentencing guidelines. This circuit, as well as eight other circuit courts of appeal that have looked at this type of issue, have found that expungements under the sentencing guidelines are properly counted as those related to actual innocence, error of laws, and the constitutional invalidity of a statute. All other expungements, whatever the phrasing may be, any other type of conviction that is set aside, whether it be classified as an expungement under state law or a certificate of rehabilitation or deferred judgment, in each one of those, those are counted because the purpose of those is to restore that defendant to the civil rights that he had before and to remove the stigma of this conviction. In Aspern, this court noted that in those circumstances, it is not designed to remove the sentencing enhancements that may affect a criminal defendant, like Mr. Payne in this case. Ultimately, they are designed to give offenders new leases on life, and they lose that benefit when they are returned to a life of crime like Mr. Payne did. Again, because there is a patchwork of laws, and the United States Supreme Court has recognized that in the United States case of 1983, case of Dickerson v. New Banner, in which they said it is an expungement, or it is a patchwork of state laws related to expungements. The sentencing guidelines make clear, as this court noted, in the application note, that the expungements which are set aside for reasons unrelated to innocence or error of laws, in order to, should not be counted. Those that are granted because they are designed to restore civil rights or to remove the stigma associated with a criminal conviction should be counted. Again, this court in Aspern addressed this issue head on, and it made it clear that convictions set aside for reasons unrelated to innocence or error of laws may be properly used in the criminal history calculation, which was what was done in this case. The purpose of an expungement is to give the young defendant, Mr. Payne was 20 when he committed the offense at issue in this case, to give the young defendant a new lease on life, a spontaneous youthful transgression should not inhibit a person's evolution into productive citizenship. But recidivists should not be protected from the full consequences of their actions. Mr. Payne could have received a benefit had he not continued his life of crime. As the government's record made clear and the record in front of the district court made clear, Mr. Payne sold marijuana. It was a small amount when he was 20 years old. But then he continued to violate the laws of the state of Mississippi, ultimately being convicted of manslaughter. Upon his release from state custody in that case, he sold a confidential informant significant amounts of actual methamphetamine. For that, he was indicted. When we presented this case and when that defendant, Mr. Payne, pled guilty in the district court, the probation services countered that expungement because they saw that it was not designed, it was not set aside for reasons related to innocence or error of laws and only that it was sought to remove the stigma of a conviction and to reduce his exposure to the federal sentencing laws. And so for that reason, this court, as well as, again, eight other circuits that have addressed this, have said that those convictions should count. Ashburn is in line not only with the First Circuit, the Sixth Circuit, the Seventh Circuit, the Eighth Circuit, the Ninth Circuit, the Tenth Circuit, the Eleventh Circuit, and the D.C. Circuit. In the line and counting those types of expungements that are given in this case, Mississippi's statute at issue for expungements relates solely to rehabilitation. And that's made clear in the case law that was cited in the government's brief. It is an expungement statute that is designed for rehabilitation. It is not designed for actual innocence or error of laws. There was certainly no finding of rehabilitation in this case. No, Your Honor, there was no finding. The district court judge was, and I'm quoting the record, was troubled by what happened in this case. And so she was found specifically that there was no issue of rehabilitation. Again, the timeline is absolutely clear that Mr. Payne continued to lead a life of crime from his conviction at 20 up until his conviction in federal court. And so there was no rehabilitation at issue in this case. Ultimately, though, as the court, as the judges have noted, it's harmless error in this case. I had one question about this. How did the guidelines transform from a base amount of something like 120 months to a base of 250 months solely because of this expungement? There was an enormous difference, right, depending on whether the expungement was counted? Yes, Your Honor, and that's because he was treated as a career offender under the guidelines. He was treated as a career offender because he had a crime of violence and a serious drug trafficking offense, which was the sale of marijuana. And because he was treated as a career offender, that's why the guidelines shift so dramatically in this case. And then the judge departed down to 180. Yes, Your Honor.  But ultimately at issue in this case is the harmless error analysis here. Ultimately, under the Benilla-Duhan line of cases, the court considered both the correct guideline range and the guideline range that the defendant contends was incorrect. And we know that the court considered the appropriate guideline range because it was in the precindent's report that was adopted by the court. The defendant, Mr. Payne, argued for it in his objections to the precindent's report, and the government, I believe, cited it in its response to the objection. The defendant argued for it again in sentencing when the court ruled on the objection, and the government again argued for it against it there. There was no confusion as to what the guidelines would have been if the sale of marijuana was not counted. The court reviewed all of these materials and made very clear that it considered them in fashioning a sentence in this case. This is more than the talismanic reference that the Fifth Circuit has said is appropriate when the court says, I would have considered it and I would have sentenced you the same thing. And ultimately, the district court in this case found more than these four reasons that the defense that Mr. Payne contends were the four reasons for the basis. As Judge Richman noted, it was a lengthy sentencing hearing. The transcript makes clear that it was an hour and a half or more at the sentencing hearing. And the court said, my sentence in this case is based on the long discussion that we've had on these objections, and it was related to the conversation that the court had with the defendant and the arguments of the parties. She looked also at the convictions and the criminal history of the defendants, the timing of the defendant's criminal activity, the lack of his respect for the law, his recidivism, and she made an individualized assessment, and she outlined the factors to the defendant on page 35 of the transcript in this case. So ultimately, the court made absolutely clear that the 180 months, she made an individualized assessment of Mr. Payne and sentenced him to what she thought was appropriate, in addition to the basis of the expungement, what she felt was not properly obtained because it was not related to actual innocence, error of laws, or constitutional invalidity. And again, that's been the holding of Ashburn in this circuit for a significantly number of years, and it was most recently affirmed in the Eighth Circuit in the Lozano case, which the government supplemented this record. If the court has no further questions, I will yield to the remainder of my time. No, sir. Thank you. Thank you. Okay, Mr. Dagnall. Are you retained counsel or court appointed? We're retained counsel, Your Honor. Okay. Your Honor, first I'd like to address the Lozano case that Mr. Herzog just mentioned. As a very recent case, I had the opportunity to review that after it was filed as supplemental authority. I would just like to point out that there was a concurrence in that, in which the concurring judge indicated that the issue, one of the issues here is that there is no true federal definition for the term expunged, but that based on the Missouri statute, which is very similar to the Mississippi statute in the restoration of the rights and totality of the expungement, he would determine that could be nothing less than to be an expungement. Your Honor, the issue with making the determination that an expungement is only valid if it is based on, in interpreting 4A1.2J, an expungement is only not counted if it's based on actual innocence or errors of law, is that we're looking at the comment in note 10, where it's referencing the convictions set aside or defendant pardoned, and referencing and recognizing that there are other mechanisms by which certain rights can be restored to a criminal defendant. And in some of these other states, they don't have complete and full expungements as we do in Mississippi. They have deferments, they have set-asides. In Mississippi, we also have a non-adjudication. But recognizing that note 6 also has language about reverse vacated or invalidated convictions, which would go to the definition of a properly, of a crime of conviction that could be counted. That's doubling the language there, which would make it unnecessary for a defendant to have a crime expunged if he had already had his crime reversed or invalidated as a matter of law. That would be the error of law if it was reversed, if there was actual innocence. The guideline is clear, although it lacks the definition for what an expungement is. 4A1.2J says expunged convictions are not counted. The note to section 10, while referencing the set-aside that deferred sentences are counted, also says expungements are not counted. I recognize that it has been, that there has been a line of the initial determination in this court that the case law of an expungement is only counted if it is set, if it is based on actual innocence, errors of law, or unconstitutional. I recognize that that has been what this court has said. But, again, I say that's a superfluous determination as that already would not count as a definition of a crime of conviction under Note 6. It would have already been reversed or determined to be invalid or vacated as pursuant to that Note 6 and not count as a crime of conviction. It would then not have to be expunged because the defendant would not be suffering any penalties from it. If the determination is made that only crimes that are expunged pursuant to actual innocence, errors of law, or unconstitutional without concern whatsoever for the statute that governs the expungement in state court, if that's the determination, then I would submit that 4A.1.2J could just be deleted from the guidelines. There's no purpose for it. It's clearly there and it clearly says that expunged convictions do not count. And, again, I don't believe that there was harmless error in this matter as articulated in argument and in the briefs. And if there are no further questions, Your Honor, that would be all of my argument. All right, sir. Thank you very much. The court will stand in recess until 9 o'clock tomorrow morning.